UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v.  )<br>)<br>**JENNY LOUISE CUDD, ET. AL.,** )<br>)<br>Defendants. )<br>) | Criminal Case No: **1:21-CR-00068** |

### Jenny Cudd's Opposition to Government's Request for Protective Order

The government is seeking a protective order in Ms. Cudd and Mr. Rosa's case. The proposed order has but one purpose: to limit the public's knowledge about the government's investigation of the January 6 incident. The effect of the proposed order is a substantial burden and intrusion on the defense and on the working relationship between the lawyer and the client, and a shifting of the burden that the government has in redacting personal information onto defense counsel.

The government does not specify which exact piece of evidence they seek to protect. Instead, they boldly seek to conceal large summary groups of evidence, such as "sources and methods law-enforcement officials have used and will continue to use, to investigate other criminal conduct related to the publicly filed charges." The government seeks to stop defense counsel from filing public pleadings in opposition to the government's charges, attempting to get the defense to agree that "no party shall disclose materials designated as Sensitive or Highly Sensitive in any public filing with the Court." The true goal of the protective order is to create a public information blackout, to allow the government monopolized narrative control on the

investigation into the January 6 incident. The strategy is to stop the defense from having the opportunity to disagree with the government's narrative in any public forum, to include the public courtroom.[1]

The proposed protective order is an audacious affront to the defendant's right to a public trial guaranteed by the Sixth Amendment and an infringement on the American people's right under the First Amendment to access public cases. See *Presley v. Georgia*, 130 S.Ct. 721, 724 (2010). Public view and scrutiny of the trial and pretrial hearings, and the government's conduct exposed at the same, is the standard American openness and transparency to which the American People and the defendant are entitled. The government answers to the People in the performance of their duties, not the other way around. This is not the Soviet Union and the government does not get to control the narrative of what happens in the courtroom. Yet, the government is attempting an unprecedented informational blackout of their strategies and activities, similar to what we have recently seen at the U.S.-Mexico border.[2] The weed-like growth of the government's power over public information is outrageous and un-American and cannot be permitted to continue unchecked.

---

[1] This is an outrageous demand, especially considering that lead counsel for the government went on national television and recklessly told the American people that the January 6 arrestees will be indicted on "sedition" charges. See *Inside the prosecution of the Capitol rioters*, CBS News (22 Mar. 2021), https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21.

[2] Kate Sullivan, *Biden Administration Continues to Deny Journalists Access to Border Facilities*, CNN (23 Mar. 2021), www.cnn.com/2021/03/22/politics/biden-administration-press-access-border-facilities/index.html.

# ARGUMENT

First, defense counsel does not work for the government. Defense counsel works solely for the defendant. The attorney-client relationship is a sacred one in the eyes of the law. See *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1991). The government's attempt to control and infringe upon the attorney-client relationship by attempting to control how defense counsel prepares for trial, who defense counsel speaks to, what counsel shows them, etc., is an unhinged governmental attempt at interfering with the attorney-client relationship. Yet this is precisely what the government's proposed order seeks. Defense opposes this infringement.

Second, the government is not entitled to keep their investigative and public surveillance techniques secretive in the middle of a public trial. The government's techniques are precisely the type of information that the public must be able to scrutinize and for which to seek congressional redress if the need arises. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Gannett Co. v. DePasquale*, 443 U. S. 368, 380 (1979) (internal quotations omitted). See also *Waller v. Georgia*, 467 U.S. 39, 45 (1984) ("In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury"); *Estes v. Texas*, 381 U. S. 532, 588 (1965) (Harlan, J., concurring) ("Essentially, the public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings"); *In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to

contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power").

Moreover, suppression hearings for defense opposition to the government's "sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges," must be held in open, public proceedings, subject to scrutiny by the American people. See *Waller v. Georgia*, 467 U.S. at 47 ("The need for an open proceeding may be particularly strong with respect to suppression hearings. A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor … The public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny").

Third, the protective order grants the government monopolized control over designation of materials as "Sensitive or Highly Sensitive" and allows them to apply the definition whenever they deem "such designation is necessary for one of the reasons stated in this paragraph or for a similar reason not anticipated by this Order." The government's biased interests and repetitive attempts to conceal discovery from the defense in this matter render them entirely untrustworthy to have sole control of such designations. In the proposed order that grants them control over the designations, the government already impedes on defendant's Sixth Amendment right to a public trial with their sly attempt at preventing public suppression hearings because they decided their policing techniques should be kept in deep secrecy. The government cannot be trusted with sole control over designation.

For example, prior to this version of the protective order, the government notified defense counsel that they intended to include police officers' body-worn cameras as evidence that is

subject to secrecy under the order. This would have been an unprecedented infringement on the public's right to review and scrutinize government conduct under the First Amendment and the defendant's right under the Sixth Amendment to have his treatment by the police analyzed by the public. See *Waller v. Georgia*, 467 U.S. at 47. Police body cameras are the modern paramount system of checks and balances on police conduct and misconduct. The government's unprecedented endeavor to hide police recordings from public view was an attempt at the desecration of the American criminal justice system. Most recently, defense counsel was assured that the government is no longer seeking this designation for police body camera footage. This order, however, leaves such designation decisions to the government.

Fourth, the government seeks to prevent the defense from using any security footage from the Capitol cameras in their pleadings unless the government has already used such footage in their pleadings. The government can choose which images of the defendant inside the Capitol can be made public, but the defense cannot. *Excuse me*?

The effect of the proposed order is that the government retains sole control over the narrative of the defendant's conduct, while the defendant is rendered Oliver Twist and has to beg the government to reveal evidence to the public to clear his name. "United States may agree to remove or reduce a sensitivity designation without further order of this Court." The defendant is rendered a beggar. In essence, the proposed order allows the defendant to plead with the government, "please sir, I want some more." The proposed order gives the government control of the evidence and the public narrative, rendering the defense an inferior party; all the while, the two parties are to stand before the court as equals.

The proposed order's blanket blackouts on evidence are plainly insulting to the defense. It creates intentionally unbalanced positions before the public and handicaps the defendant from being able to defend her image without the government's permission. The proposed order grants the government an unfair positional advantage over the defendant.

The reality is that if the government is providing evidence to the defense, the defense should have the freedom to decide whether to file public pleadings with such evidence to contradict the government's accusations of the defendant. The government should not have unfettered control over what evidence the public sees in this case, yet that is precisely the power that the government's proposed order grants them.

In Ms. Cudd's case, images from the Capitol security video footage, which the government seeks to keep under seal, will show the defendant not "demonstrating," not behaving "corruptly," and not interfering with congressional proceedings nor being anywhere near the congressional chambers — in direct contradiction to the government's indictment. The government's audacious attempt to keep the defendant from filing such imagery in her defense pleadings is an affront to the justice system.

Fifth, the government filed a template declaration [Document 34-1], which is unparticularized to defendants' case and which bundles all Capitol cases together and calls them an "attempted insurrection," even though the defendants are not charged with either a conspiracy or insurrection, nor attempt at the same.[3] The government is arguing a template storyline about their January 6 investigation with absolutely no particularization to this case and the charges against these defendants. The government argues the much broader idea that someone out there

---

[3] Ms. Cudd has previously objected on the record to the government's attempt at creating a false conspiracy narrative for the January 6 arrests.

related to the January 6 incident has not yet been charged and thus Ms. Cudd should be prevented from defending her case publicly. This argument is too broad and too remote to meet the constitutional burden that the government has in seeking a seal. See *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984).

Moreover, even in the broader sense, the government does not make a sufficient argument to justify the protective order. The January 6 incident played out publicly, with the world watching livestreams from inside the Capitol on television, Twitter, Facebook, YouTube, and so on. The fact that the government continues making arrests is also public knowledge. What evidence, then, is the government seeking to protect that would justify such secrecy? The government advised that they plan to provide 15,000 hours of video footage, recordings from 1,600 electronic devices, the results of hundreds of searches of electronic communication providers, 210,000 public tips, 80,000 police reports and 93,000 attachments, and, according to the affidavit, video of some "tunnels." It appears there might be some footage, unrelated to the defendant's charges, that the government is trying to conceal and is using this remote evidence as a basis to black out all evidence related to the defendant. To the extent that evidence depicting Ms. Cudd is concealed from public view, we object. The evidence against Ms. Cudd has nothing to do with any tunnels nor any secret passage ways. Ms. Cudd was in a public space open to tourism. There is nothing confidential about Ms. Cudd's location in the Capitol.

Sixth, the government is seeking to shift the burden of their responsibility of redacting sensitive information belonging to their witnesses onto defense counsel, with penalty also shifted onto defense counsel for any violations of a potential sensitivity breach. Defendant has but one lawyer, yet the government employs thousands of lawyers and assistants for their legal teams.

Surely, the government can find a civil servant, to whom they already pay a hefty salary, to redact information such as social security numbers of their witnesses. This is an undue burden on the defense.

## DEFENSE PROPOSAL

The defense proposes the implementation of the standard constitutional standard outlined by the Supreme Court to analyze protections on information and attempts at restricting a public trial for a criminal defendant. A protective order that requires filing of motions under seal when they reference the protected material infringes on defendants public trial right, therefore this standard is applicable. "Under *Press-Enterprise*, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. at 48, citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984).

As to other discovery subject to the protective order, the standard is also high. "When the Government is seeking a protective order, it bears the burden of showing that good cause exists for its issuance. Good cause requires a 'particularized, specific showing.'" *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (internal citations omitted). "In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and (3) the public's interest in disclosure outweighs the possible harm." *Id*. In weighing the need for a protective order against constitutional prejudice to the Defendant or harm to the public, "the

Court considers two factors—the nature and circumstances of the alleged crime and the Defendant's criminal history. Considering the type of crime charged helps assess the possible threats to the safety and privacy of the victim." *Id*.

The nature and circumstances of this particular case and this particular defendant, the facts relevant to a determination of a protective order, are that Ms. Cudd is a 36-year-old business owner arrested for the first time in her life. On January 6, 2021, about 21 minutes after Congress recessed, Ms. Cudd walked through open doors of the Capitol's Upper West Terrace. She walked around this floor, took selfies, and walked out. Afterwards, she is alleged to have recorded selfie videos discussing politics. She used words like "stormed the Capitol" though the definition of this phrase to her appears to be walking around and taking selfies. In response, the government charged her with a felony and four misdemeanors, and obtained a search warrant to collect an entire year's worth of her private communications.[4]

The nature and circumstances of this case and this defendant do not warrant a protective order related to evidence of her alleged wrongdoing. The prejudice to the defendant in not being able to defend herself in public pleadings and hearings is immense, as discussed *supra*. And, the public's right to know what actually happened on January 6 is of paramount importance. The government's inexplicable paranoia over unidentified dangers of transparency is their burden to explain, and they have not done so. The government cannot and does not meet the standard for their sought censorship of the defense.

There are limited pieces of discovery that the government holds which might meet the standard for a particularized, specific need for a protective order. For example, if the government

---

[4] An outraged Motion to Suppress about the government's attempt to collect and criminalize political speech is forthcoming.

is seeking to protect the identity of a particular witness to protect their witness from physical or economic harm by members of the public, they can attempt to make such an argument under *Dixon* and *Will*. But a blanket statement that all "information regarding the government's confidential sources" should be subject to protection is overly broad and unduly restrictive on the defense, noncompliant with the "no broader than necessary" requirement under *Press-Enterprise* and *Waller,* nor the burden requirements under *Dixon.*

Or, if the government is providing security footage from inside the Capitol that does *not* include imagery of the defendant, and is of an area not previously photographed, such as these alleged "tunnels," and the government claims a security interest in the footage, then again, the government would be able to argue and maybe meet their burden for that limited set of depictions. But to say that all video from security cameras in the Capitol, especially ones that show the defendant's alleged criminal conduct, are subject to secrecy unless the government has already made those images public, is an unreasonable infringement on the defendant's Sixth Amendment right to a public trial. The government cannot restrict the defendant's ability to defend her conduct using the government's evidence under the blanket designations "Sensitive or Highly Sensitive."

The government bears the burden of proof when they wish to hide evidence from the public. The defense does not consent to waiving the government's burden and instead seeks rigorous imposition of this constitutional burden. After all, constitutional rights are on the line.

## CONCLUSION

The defense asks for the government's proposed protective order to be denied.

Respectfully submitted,
By Counsel:

/s/
_____
Marina Medvin, Esq.
*Counsel for Jenny L. Cudd*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

## CERTIFICATE OF SERVICE FOR CM/ECF

I hereby certify that on April 8, 2021, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
_____
Marina Medvin, Esq.
*Counsel for Defendant Jenny L. Cudd*

