UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Criminal Case No: **1:21-CR-00068** |
| ) | |
| **JENNY LOUISE CUDD, ET. AL.,** ) | |
| ) | |
| Defendants. ) | |

## JENNY CUDD'S REPLY TO
## GOVERNMENT'S OPPOSITION TO MOTION TO SEVER DEFENDANTS

The government's opposition to severing the defendants in this matter concentrates on their desire to build a unified case against Ms. Cudd and Mr. Rosa, relying on case law for conspiracy cases even though the defendants are not charged with a conspiracy. Moreover, the government takes gratuitous liberties with the facts to get to their conclusion.

**I. The Government Misrepresents The Facts**

The government's opposition to the Motion to Sever Defendants misstates the facts of the case in order to bolster their argument for joinder of the defendants.

First, the government once again includes evidence of the wrongdoing of others physically present at the Capitol on January 6, unrelated to the individual actions of the two defendants at issue, to create the appearance of unified action or conspiracy or plan among Trump supporters. Once again, the defense is forced to respond that there is no evidence of collusion or conspiracy between Ms. Cudd and the others present on January 6. Once again, the defense objects to this characterization.

The government then argues that "Cudd and Rosa both live in Midland, Texas, and they knew each other prior to January 6, 2021. They checked into the same hotel in Washington, D.C. on January 5, 2021, and checked out on January 7. On January 6, they went to the U.S. Capitol together." This is the crux of the government's case for joinder in addition to the defendants being photographed walking around the ground floor of the Capitol. However, the government's evidence contradicts this notion.

As can be seen from an excerpt from an FBI 302 report of their interview of Mr. Rosa:

> *Rosa was further asked the following questions from the Washington Field Office Command Post:
>
> 1) What was your intent for going to DC? For going to the demonstration? Where you armed while in DC? Did you travel with weapons?
> -On 12/19/2020, after the Tweet from President Trump, "go to DC" was released, Rosa booked his airline and hotel to attend the rally on 01/06/2021. Rosa wanted to be there for the historical day, defend the constitution believing the electoral process was not fair and clean. Rosa wanted to join in with his voice for a recount and have the electors be presented with the evidence.
> -Rosa was not armed and did not travel with weapons.
> -Rosa did not think in his wildest dreams to go to the capitol and is ashamed of himself.
>
> 2) Did you travel/ plan on travel with anyone?
> -Rosa did not travel with anyone.
>
> 3) Was it a coordinated effort?
> -The rally was coordinated by the "Women for America" and was centrally controlled. Outside of the rally, people did their own things. No coordination.
>
> 4) Did you participate in breaching the capitol building?
> -No, the capitol doors were open when Rosa got there. If they were closed, that would have been Rosa's stopping point.
>
> 5) If yes, what was your intent for demonstrating in the building? Did you destroy anything while in the building?
> -Rosa did not intend to demonstrate and did not destroy anything. Rosa did not realize anything was being broken until he was inside.
>
> 6) Was it a coordinated effort?
> -It was a herd mentality going into the capitol. No coordinated effort.

Contrary to the government's implication that the two traveled together or planned to be at the Capitol together, Mr. Rosa's interview with the FBI shows they did not. This is further supported by the hotel receipts, which the government obtained and shared with the defense. The Willard Hotel receipts show that rooms for the two co-defendants were booked on different dates and for different prices. (Ms. Cudd paid $143 more for her stay. If they coordinated, she would have surely chosen to save that money and would not have used Expedia for that booking.) The two stayed on different floors and had dinner separately and at different times, according to meal receipts. These were not the only two Trump supporters staying at the Willard Hotel from January 5-7. A large number of other Trump supporters shared those booking dates at the Willard. And, while the two may have known each other from back home and shared political views, that is not a basis for joinder. The entire crowd of Trump supporters, many of whom stayed at the Willard Hotel, were present at the Capitol. They are not charged together.

Next, Ms. Cudd's repetitive use of the word "we" is used continuously in her conversations as a style of speech. This is best illustrated in the example of Ms. Cudd's statement, "we did break down the Nancy Pelosi's office door," which the government knows Ms. Cudd did not do. As the government's quotes in their Response show, Ms. Cudd used the word "we" to indicate "patriots." The word "we" does not refer to her paired with any particular individual.

Finally, the government audaciously states that they are unsure of whether Mr. Rosa's statement would be used against the defendants at trial *at the same time as* relying on an admission from Mr. Rosa's statement in their "Factual Background" section. Mr. Rosa's statement appears necessary for them, after all.

**II. Jury Instruction Cannot Cure Defendant's Right to Cross Examine Witnesses**

The government argues that Mr. Rosa's statement can be redacted and the jury can be instructed not to consider the statement against Ms. Cudd. This is entirely inapplicable to the facts at hand, where Mr. Rosa is explicitly questioned by the FBI about Ms. Cudd and where he provides statements about Ms. Cudd separate from the ones listed *supra*, which require the context of cross examination. Moreover, Mr. Rosa's statement's about previously knowing Ms. Cudd are relied upon by the government in making their argument for joinder in the same motion where they claim these statements would not be used at trial. It is impossible to separate out statements about Ms. Cudd from Mr. Rosa's interview. The government's argument is simply inapplicable to the facts at hand.

**III. Defendant Waived Speedy Trial Because Government Made Plea Bargaining Contingent On The Waiver Minutes Before The Last Hearing**

In their Response, the government asks the court to disregard defendants' disagreement on waiver of speedy trial rights as a basis for severance. They cite defendants' joint agreement to waive their speedy trial rights at the last hearing. However, the defendants agreed to waive different time periods. Mr. Rosa agreed to waive 60 days, whereas Ms. Cudd only agreed to waive 30 days. The parties do not hold consistent agreement on the waiver of their rights.

Ms. Cudd initially opposed waiver of her speedy trial rights based on government's request for waiver to support their continuing investigation of Trump supporters, citing the government's deliberate choice to arrest and indict Ms. Cudd as quickly as possible. The

government made a knowing decision to run the speedy trial clock for Ms. Cudd in doing so. Ms. Cudd reiterated this position in court at the last hearing.

The reason why Ms. Cudd agreed to the 30-day speedy trial waiver at the last hearing is because minutes before the hearing, counsel for the government informed counsel for Ms. Cudd that a plea offer is expected to be presented to the defendants in two to three weeks, and that if Ms. Cudd refuses to waive her speedy trial rights for a brief period, the government will refuse to make any plea offers to Ms. Cudd. Plea offers were contingent on waiver of speedy trial, according to the government. Curious to see the structure of the offer, Ms. Cudd agreed to waive speedy trial for 30 days. As of the date of this filing, five weeks have passed since this conversation between counsel and the government has still not made a plea offer as they had promised.

The government forced the defendant's hand at waiving her speedy trial rights based on misinformation about an impending plea offer, and is now slyly attempting to use this waiver against the defendant in their Response pleading, *knowing* that the basis of the waiver was the plea offer and that they failed to deliver it as promised. This is walking the fine line of gamesmanship.

**IV. Mr. Rosa Joined Defense Motion, Agreeing He Can Be Called As Witness For Ms. Cudd**

Finally, the government argues that Ms. Cudd did not meet her burden of establishing that Mr. Rosa will provide exculpatory testimony if the cases are severed. First, Mr. Rosa's joinder in Ms. Cudd's motion shows his willingness to testify in her case. Second, Ms. Cudd explained the testimony is indeed exculpatory in that it will negate essential elements of the government's case

against her. Third, of course there is a bonafide need for testimony on the essential elements of the charges against her. Contrary to the government's contentions, the legal terms "picket," "corruptly," "demonstrate," and the like, have proof associated with them beyond the government's understanding of the conduct as walking around and taking selfies.

For example, the element of acting "corruptly" requires proof of dishonesty. *Arthur Andersen, LLP v. United States*, 544 U.S. 696, 703-04 (2005). Mr. Rosa will be able to testify that Ms. Cudd never acted dishonestly. Similarly, Mr. Rosa's testimony would show that Ms. Cudd's actual conduct was not in conformity with the criminal definition of picketing or demonstrating. The same goes for acting criminally disruptive. Since the government concedes that there is no audio recording from inside the Capitol, the witness' testimony about what Ms. Cudd did and did not say while in the Capitol are critical to the defense. Therefore, this witness' testimony as to exact conduct observed, to show nonconformity with the legal requirements of the allegations against Ms. Cudd, is essential for the defense to present at trial — in order to put forward a complete defense. See *California v. Trombetta*, 467 US 479, 485 (1984) (the Constitution guarantees all criminal defendants "a meaningful opportunity to present a complete defense").

## CONCLUSION

In summary, the defense opposes the government's contentions in their opposition memorandum.

Respectfully submitted,

By Counsel:

/s/

Marina Medvin, Esq.
*Counsel for Jenny L. Cudd*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

## CERTIFICATE OF SERVICE FOR CM/ECF

    I hereby certify that on April 16, 2021, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/

Marina Medvin, Esq.
*Counsel for Defendant Jenny L. Cudd*