UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**   ) | |
| ) | |
| v.   ) | CRIMINAL CASE NO: 1:21CR00068-001 |
| ) | |
| **JENNY CUDD,**   ) | SENTENCING: MARCH 23, 2022 |
| ) | |
| DEFENDANT.   ) | |

**DEFENDANT'S OBJECTION TO GOVERNMENT'S CONTINUANCE REQUEST**

On March 22, the night before Sentencing, at 9:42 PM, the government filed a motion requesting a continuance to determine "what steps, if any, are appropriate" with regards to a statement that Ms. Cudd made to U.S. Probation, which was filed with the court on March 10, 2022, twelve days prior. In that statement to Probation, Ms. Cudd accepted responsibility for her actions.

Since March 10, the government readily conversed with defense counsel and the defendant. The government never once mentioned a concern.

On March 16, the defense filed Ms. Cudd's sentencing memorandum first, followed by the government. The government never once mentioned a concern with Ms. Cudd's statement. Instead, the government commented on the fact that Ms. Cudd made a statement to probation and accepted responsibility, characterizing it as "tepidly". See ECF 90. This is ***the exact same statement*** that the government now claims they need a continuance to determine what to do about. See ECF 92.

>
> completely legally, and I did not do anything to hurt anybody or destroy any property. So, yes, I would absolutely do it again."
>
> Cudd provided a statement to the Probation officer that drafted Cudd's PSR in which she tepidly accepts responsibility. Cudd stated, "I did not realize at the time that I was breaking the law when I walked inside through open doors to the Capitol. When I said on TV that I didn't do anything unlawful I genuinely meant that I did not believe that I did anything illegal. . . . I wish I never entered the Capitol. I wish I didn't go on TV or make those selfie videos before fully appreciating everything that happened and how it was perceived. I feel ashamed being associated with the actions of those who hurt police officers and those who resorted to violence. . . . Again I want to apologize for adding my presence to the crowd inside of the Capitol and to say that I regret entering the Capitol." PSR ¶ 38.

>
> authority to enter the building." The Court accepted the defendant's plea, and then scheduled the matter for sentencing.
>
> On March 10, 2022, the U.S. Probation Officer filed the final Presentence Investigation Report (PSR). The PSR quotes Cudd's statements in the presentence interview. According to the PSR, Cudd stated, "I did not realize, at the time, that I was breaking the law when I walked inside through open doors to the Capitol. When I said on TV that I didn't do anything unlawful I genuinely meant that I did not believe that I did anything illegal. I am not trying to absolve myself of responsibility for entering the Capitol, but I wanted the court to know what I did not know at the time I walked in." PSR (ECF 86 at 9).

On top of that, in that same sentencing memorandum, the government credited Ms. Cudd the two points for acceptance of responsibility, the same two points that they now wish to deduct! See ECF 90.

>
> study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.*
>
> The government agrees with the Sentencing Guidelines calculation set forth in the Pretrial Service Report (PSR). According to the PSR, the U.S. Probation Office calculated Cudd's adjusted offense level under the Sentencing Guidelines as follows:
>
> | | |
> |---|---|
> | Base Offense Level (U.S.S.G. §2B2.3(a)) | 4 |
> | Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | 2 |
> | Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
> | Total Adjusted Offense Level | 4 |
>
> *See* PSR ¶¶ 40-48.
>
> The U.S. Probation Office calculated Cudd's criminal history as a category I, which is not disputed. PSR ¶ 51. Accordingly, the U.S. Probation Office calculated Cudd's total adjusted offense level, after acceptance, at 4, and her corresponding Guidelines imprisonment range at 0-6 months. PSR ¶¶ 9, 132. Cudd's plea agreement contains an agreed-upon Guidelines calculation that mirrors the U.S. Probation Office's calculation. *See* ECF 75 ¶ 5.A.

> **c. At a minimum, the defendant should not receive credit under the plea agreement for acceptance of responsibility.**
>
> If this matter does proceed to sentencing on Wednesday, this Court should not apply the offense-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Section 3E1.1(a) provides that if a defendant "clearly" demonstrates acceptance of responsibility for her offense, the offense level can be decreased by two levels. While entry of a guilty plea and admitting the conduct comprising the offense of conviction and all relevant conduct is "significant" evidence of acceptance of responsibility, such evidence can be outweighed by "conduct of the defendant that is inconsistent with such acceptance of responsibility." *See* U.S.S.G. § 3E1.1, cmt. 3. For that reason, the Sentencing Guidelines specifically state that "[a] defendant who enters a guilty plea is not entitled to an adjustment under [§ 3E1.1] as a matter of right." *Id.* Courts routinely deny the
>
> 6
>

Then, on March 17, the government conducted a one-and-a-half-hour interview with Ms. Cudd, pursuant to her plea agreement. The government never once mentioned a concern with Ms. Cudd's statement.

On March 21, after obtaining Ms. Cudd's statements pursuant to the requirement within the plea agreement, the government contacted defense counsel and advised that Ms. Cudd is in violation of her plea agreement because of a statement they were made aware of two weeks prior to conducting her interview under the plea agreement — the statement that the government already commented on in their sentencing brief. Undersigned counsel disagreed with the government's assessment, advising the prosecutor that Ms. Cudd is in compliance with her plea agreement.

Ms. Cudd's Statement of Offense, which was accepted by this court, states in relevant part, "The defendant knew at the time she entered the U.S. Capitol Building that she did not have lawful authority to enter the building." ECF 76. This is because the relevant part of 18 U.S.C. § 1752(a)(1) includes the language "*knowingly enters or remains in any restricted building or grounds without lawful authority to do so.*" At no point did Ms. Cudd claim to have mistakenly entered the Capitol building, or that she had lawful authority to enter the Capitol building. Ms. Cudd entered the Capitol building knowingly, and she knew that she had no lawful authority to enter. Ms. Cudd simply explained that at the time that she entered she was not aware she was committing a crime. This statement was given along with a statement of remorse and full acceptance of responsibility for her actions.

The government's claims and requests are ridiculous, not based in law, and suspiciously malicious. They also amount to gamesmanship by a prosecutor.

Had the prosecutor raised this issue with the defense upon becoming aware of the statement, the parties could have discussed and clarified the issue. But the government chose to first comment on Ms. Cudd's statement as an acceptance of responsibility in their sentencing

memo and proceeded to obtain a statement from Ms. Cudd. The government then had a change of heart and *just like that* decided that the language they **knew about and commented on as an acceptance of responsibility** all of a sudden became something they should get to reconsider on the night before sentencing, and continue Ms. Cudd's sentencing to a later date.

This is absolutely unacceptable.

Ms. Cudd has spent a substantial amount of money for lodging and travel from Midland, Texas to Washington D.C. for her sentencing hearing. Aside from the steep cost of the trip, Ms. Cudd is also emotionally vested in this case and her sentencing date — tomorrow is the date of closure for Ms. Cudd.

The government's behavior in making the ridiculous claim and filing a continuance request on the night prior to sentencing, in order to reconsider something they already took a position on, on the record, is absolutely atrocious conduct — conduct unbecoming of a prosecutor who owes a duty to the defendant as much as to the public. See *Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."); see also *United States v. Ward*, 63 F. Supp. 2d 1203 (C.D. Cal. 1999) ("The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That body of `The People' includes the defendant and his family and those who care about him.")(*internal citations omitted*).

The government mentions the defense request for discovery sanctions — perhaps the government's irrational motion is retaliatory action in response to the request for sanctions. The defense request for sanctions is based on the government's continuous obligation to produce discovery to the defendant *through sentencing*. The defense pointed out that the government refused to provide certain evidence to the defense pursuant to their due process requirements and requested sanctions based on the violation. The government cites a decision in a trial that was completed today in the case of Couy Griffin as evidence that sanctions are not warranted. Instead, the case of Couy Griffin revealed that there is indeed additional exculpatory evidence that the government possesses which it did not produce to the defense. In the matter of Couy Griffin, the government turned over this evidence to the defense in the middle of the trial. That evidence was not provided to Ms. Cudd. Moreover, the Statement of Offense for Ms. Cudd states that the Vice President remained in the Capitol building until the session resumed, while Mr. Griffin's Information does not. This claim about the Vice President's location is what the defense brought to the court's attention in Ms. Cudd's sentencing memorandum.

The government has continuously acted in bad faith in their dealings with Ms. Cudd, even threatening to claim that she is in violation of her plea agreement for not interviewing with them *immediately following her guilty plea* — even though that was never a requirement of Ms. Cudd's plea agreement. See Defense Exhibit 15.

The government's motion should be denied and the malicious behavior behind this evening's filing should be reviewed for additional sanctions.

Date: March 22, 2022

                                        Respectfully submitted,
                                        By Counsel:

                                        _____/s/_____
                                        Marina Medvin, Esq.
                                        *Counsel for Defendant*
                                        MEDVIN LAW PLC
                                        916 Prince Street
                                        Alexandria, Virginia 22314
                                        Tel:  888.886.4127
                                        Email: contact@medvinlaw.com

## **CERTIFICATE OF SERVICE FOR CM/ECF**

      I hereby certify that on March 22, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

                                        _____/s/_____
                                        Marina Medvin, Esq.