UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 21-CR-0068 (TNM) |
| | : | |
| JENNY CUDD, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO ALTER JUDGMENT

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Defendant Jenny Cudd's ("Cudd") Motion to Alter Judgment, ECF No. 96. The defendant seeks to amend the judgment by removing Standard Condition 10 which provides, "The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers." For the reasons set forth below, the government opposes the defendant's motion.

## BACKGROUND

On January 6, 2021, Defendant Jenny Cudd, wearing a bulletproof sweatshirt, unlawfully entered the Capitol. On January 6, 2021, prior to her entry, Cudd posted a Facebook live video in which she stated, "the police are pepper spraying Trump supporters down there. . . . Patriots have already pushed back one barricade. I think there are plenty of us that are willing to storm the Capitol. National Guard's out. I can tell you one thing – with all the people that drove here, there's also plenty of armed patriots."

1

After, at approximately 2:35 p.m., Cudd entered the U.S. Capitol building through the Upper West Terrace Door. While inside, she walked through the Rotunda, Statuary Hall area, and an area near the House Chamber. She exited through the Upper House Door at approximately 2:54 p.m.

After leaving the Capitol, Cudd posted another Facebook live video. In the video, she made the following statements:

- "And when Pence betrayed us is when we decided to storm the Capitol."

- "We just pushed and pushed and pushed and pushed and yelled 'go' and yelled 'charge' and on and on and on and on."

- We didn't vandalize anything. But we did. We did, as I say that. We did break down Nancy Pelosi's office door and somebody stole her gavel and took a picture sitting in the chair flipping off the camera."

- "So we stayed in the Capitol as long as we could until they started gassing us."

- "[F]uck yes, I am proud of my actions, I fucking charged the Capitol today with patriots today. Hell, yes I am proud of my actions."

- "I'm proud of everything that I was a part of today. And I'll be proud of everything that I'm a part of at the next one."

On January 8, 2021, Cudd participated in an interview with a news station in which she described her actions on January 6, 2021, in Washington D.C. and reiterated her pride in storming the Capitol. Specifically, she stated, "Yes, I would absolutely do it again."

Cudd was charged by indictment with: (1) Obstruction of an Official Proceeding, and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (2) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

(4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (5) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Indictment (ECF 18).

On October 13, 2021, Cudd pled guilty to one count of violating 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds. *See* Plea Agreement (ECF 75). On March 23, 2022, Cudd was sentenced to a $5000 fine, two months of probation, $500 in restitution, and a $25 special assessment. As part of the judgment, while on probation, Cudd is subject to thirteen standard conditions of supervision, including, "You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers.")." Prior to listing the standard conditions, the Judgment states, "These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition." On March 25, 2022, Cudd filed the subject Motion to Alter Judgment to Remove Standard Condition of Supervision 10.

**ARGUMENT**

I.    **Applicable Authority**

The U.S. Sentencing Guidelines sets forth standard conditions that "are recommended for probation." U.S.S.G § 5B1.3(c). Standard condition 10 provides, "The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or taser). U.S.S.G. § 5B1.3(c)(10). This condition was amended and reclassified from a special condition to a standard condition in 2018 to "promote public safety and reduce safety risks to probation officers." FCL Federal Sentencing Guidelines Manual Amendment 803, Nov. 1, 2018.

The Court may impose standard conditions of probation if such conditions are reasonably related to the relevant sentencing factors listed at 18 U.S.C. § 3553(a)(1) and (2) and involve only such deprivations of liberty or property as are reasonably necessary for the relevant sentencing purposes listed at 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3563(b).

Courts have held that restrictions on firearm possession during probation, including for defendants convicted of nonviolent misdemeanors, are reasonable. *See, e.g., United States v. Lester*, No. 94-6597, 66 F.3d 326, at *2 (6th Cir. Sept. 11, 1995) (upholding prohibition on firearm possession during probation for misdemeanor of failing to maintain proper records as required of a federal firearms dealer, a nonviolent misdemeanor); *see also Benzing v. North Carolina*, No. 17-619-KDB-DCK, 2020 WL 3439558, at *6 (W.D. N.C. June 23, 2020) (holding firearm restriction during probation was reasonable after the defendant was convicted of criminal contempt); *cf. United States v. Snead*, No. 12-cr-132M, 2014 WL 4473773 (D.R.I. Feb. 4, 2014 (United States Postal Service employee was charged with unlawfully opening mail matter and removing gift cards

4

and cash, a non-violent felony offense, and was restricted from possessing a firearm while on pretrial release).

## II.     The Court Should Not Alter the Judgment to Remove Standard Condition 10

The standard conditions, including standard condition 10, are reasonably related to the relevant sentencing factors listed at 18 U.S.C. § 3553(a) and involve only such deprivations of liberty or property as are reasonably necessary for the relevant sentencing purposes listed at 18 U.S.C. § 3553(a)(2), especially the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, and the need for the sentence imposed to afford adequate deterrence to criminal conduct.  18 U.S.C. §§ 3533(a)(1), (a)(2)(A), (a)(2)(B).

On January 6, Cudd—wearing a bulletproof sweatshirt—marched onto Capitol grounds, determined to enter the Capitol building during the middle of a riot. She knew law enforcement was pepper spraying rioters when she approached the grounds, yet she continued marching forward. She was also undeterred by physical barriers once on Capitol grounds. She knew rioters had broken down barricades, and she climbed a wall to get to the building entrance. Cudd's intent was clear, and she was well-aware of—and unphased by—the possibility of violence. In a Facebook live video posted on her way to the Capitol, she said "I think there's plenty of us that are willing to storm the Capitol. . . . And I can tell you one thing, with all the people who drove here there's also are plenty of armed patriots."

At approximately 2:35 p.m., Cudd walked into the U.S. Capitol through the Upper West Terrace Door. Cudd remained in the building for approximately 20 minutes. She failed to exit despite hearing loud banging and smelling—and feeling the effects of—tear gas. In fact, according to Cudd, she exited the building only when forced out by law enforcement officers. In a Facebook

5

live video Cudd posted the evening of January 6, Cudd said, "So we stayed in the Capitol as long we could until they started gassing us . . . . So they started gassing us and they pushed us all out.

After exiting, Cudd appears to have remained on Capitol grounds for another hour and 20 minutes. She witnessed violence during this time. Cudd described the scene in a later Facebook live post: "There were some guys that were trying to break in. Of course, apparently, the windows are bulletproof. There were some guys that were trying to break in. They'd gas 'em and then they'd retreat and then everyone would push forward again."

After leaving Capitol grounds, Cudd posted a Facebook live video in which she celebrated the property destruction that occurred earlier in the day. Specifically, she said, "We didn't vandalize anything. But we did. We did, as I say that. We did break down the Nancy Pelosi's office door and somebody stole her gavel and took a picture sitting in the chair flipping off the camera."

Cudd's statements in this Facebook live video also demonstrate her complete lack of remorse. In the video Cudd states, "I'm proud of everything that I was a part of today. And I'll be proud of everything that I'm a part of at the next one." Cudd doubled down on this sentiment on January 8, 2021, when she was interviewed by a local newspaper. During the interview Cudd stated, "I stood up for what it is I believed in. And I can tell you this, and I've told everybody this, I would do it again in a heartbeat because I did not break any laws. I went inside the Capitol completely legally, and I did not do anything to hurt anybody or destroy any property. So, yes, I would absolutely do it again."

Because of the violent nature of Cudd's remarks, including her celebration of "armed patriots" at the Capitol; her willingness to push forward onto Capitol grounds and into the Capitol building even after she knew law enforcement officers were clashing with rioters; her preparation for violence by bringing and wearing a bulletproof sweatshirt; her lack of remorse; and her

6

statements that she would engage in similar behavior again, standard condition 10—prohibiting the defendant from possessing firearms during the imposed period of probation—is warranted and the least restrictive deprivation of liberty or property that is reasonably necessary for the relevant sentencing purposes listed at 18 U.S.C. § 3553(a)(2). This prohibition is also warranted to ensure the safety of Probation officers overseeing Cudd while on probation.

## **CONCLUSION**

WHEREFORE, for the above-stated reasons, the Court should deny Cudd's Motion to Alter Judgment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Laura E. Hill

LAURA E. HILL
Trial Attorney, Detailee
NV Bar No. 13894
175 N Street, NE, 9th Floor
Washington, D.C. 20002
Laura.E.Hill@usdoj.gov
(202) 598-3962

## CERTIFICATE OF SERVICE

On this 31st day of March, 2022, a copy of the foregoing was served on all parties listed on the Electronic Case Filing System.

By: <u>*/s/ Laura E. Hill*</u>
LAURA E. HILL
Trial Attorney